IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | | |
|---|---|---|
| JESSICA A. HOBBS, | ) | |
| | ) | |
| | ) | |
| Plaintiff | ) | Civil No. 08-616-MO |
| | ) | |
| v. | ) | OPINION AND ORDER |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| | ) | |
| | ) | |
| Defendant. | ) | |

**MOSMAN, J.,**

      Plaintiff Jessica Hobbs ("Hobbs") challenges the Commissioner's decision finding her not

disabled under Title XVI of the Social Security Act and denying her application for Supplemental

Security Income ("SSI"). I have jurisdiction under 42 U.S.C. § 405(g). For the following reasons,

the Commissioner's decision is REVERSED and REMANDED for further proceedings consistent

with this Opinion and Order.

I review the Commissioner's decision to ensure the Commissioner applied proper legal standards and that his findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004).

## PROCEDURAL BACKGROUND

Ms. Hobbs applied for SSI under Title XVI of the Social Security Act on November 4, 2003. AR 76-78.[1]  After the Commissioner denied these applications, an Administrative Law Judge ("ALJ") held two hearings (AR 1088-1116) and subsequently found Ms. Hobbs not disabled on August 14, 2007. AR 20-30. Ms. Hobbs appeals the ALJ's denial.

## THE ALJ'S FINDINGS

The ALJ made her decision based upon the five-step sequential process established by the Commissioner. 20 C.F.R. § 416.920 (establishing the five-step evaluative process for SSI claims); *Bowen v. Yuckert*, 482 U.S. 137, 140-41 (9th Cir. 1987).

The ALJ's decision found Ms. Hobbs's morbid obesity, personality disorder, fibromyalgia, and mild hearing loss "severe" at step two in the sequential process. AR 22. The ALJ found that these impairments did not meet or equal a disorder "listed" in the Commissioner's regulations, and assessed Ms. Hobbs's residual functional capacity ("RFC"):

> [T]he claimant has the residual functional capacity to sit, stand, or walk for six hours in an eight-hour day; lift 20 pounds occasionally and 10 pounds frequently; she has no other limitations [upon] physical function of light work; she cannot perform complex tasks, and can have only limited interaction with the general public.

AR 22.

_____

[1]Citations "AR" refer to indicated pages in the official transcript of the administrative record filed with the Commissioner's Answer July 7, 2008 (Docket #9).

The ALJ found that Ms. Hobbs could no longer perform her past relevant work at step four (AR 29), but found that she could perform jobs existing in the national economy at step five. AR 29-30. The ALJ therefore found Ms. Hobbs ineligible for SSI benefits at any time through the date of her decision. AR 30.

**ANALYSIS**

Ms. Hobbs claims that the ALJ erroneously evaluated her credibility, the opinions of treating and examining physicians, and a third-party witness statement. Ms. Hobbs also alleges that the ALJ made numerous other errors regarding her specific impairments, but does not develop these arguments.

**I.      Unsupported Arguments**

Ms. Hobbs initially claims that the ALJ failed to address her shoulder impairment and her obesity. Pl.'s Opening Br. 4. The ALJ noted both of these impairments in the course of her decision. AR 25, 27-28. Ms. Hobbs offers no development of these arguments. These submissions are not based upon the record and are therefore rejected.

**II.     Credibility**

Ms. Hobbs asserts that the ALJ erroneously found her not credible. Pl.'s Opening Br. 14. The ALJ found that Ms. Hobbs "cannot be found credible regarding her symptomology." AR 27. The ALJ based this finding upon Ms. Hobbs's daily activities and the medical record, including extensive discussion of Ms. Hobbs's symptom exaggeration. AR 24-27.

**A.      Credibility Standard**

Once a claimant shows an underlying impairment which may "reasonably be expected to produce pain or other symptoms alleged" the ALJ must provide "clear and convincing" reasons for

PAGE 3 - OPINION AND ORDER

finding a claimant not credible. *Lingenfelter,* 504 F.3d at 1036 (citing *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)).  The ALJ's credibility findings must be "sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995).  The ALJ may consider objective medical evidence and the claimant's treatment history, as well as the claimant's daily activities, work record, and observations of physicians and third parties with personal knowledge of the claimant's functional limitations.  *Smolen v. Chater*, 80 F.3d 1273, 1284 (9th Cir. 1996).  The ALJ may additionally employ ordinary techniques of credibility evaluation, such as weighing inconsistent statements regarding symptoms by the claimant.  *Id.*  Once a claimant shows an underlying impairment, the ALJ may not, however, make a negative credibility finding "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 883 (9th Cir. 1998).

### B.    Credibility Analysis

#### 1.    Daily Activities

The ALJ may cite daily activity in considering "whether a claimant engages in daily activities inconsistent with the alleged symptoms."  *Lingenfelter*, 504 F.3d at 1040 (citing *Rollins v. Massinari*, 261 F.3d 853, 857 (9th Cir. 2001); *Bunnell v. Sullivan*, 947 F.3d 341, 346 (9th Cir. 1991) (en banc); *Fair v. Bowen*, 885 F.2d 597, 602-03 (9th Cir. 1989)).  This is not a finding that the claimant's activities are equivalent to work activity; it is a finding that the claimant's activities do not support the alleged level of disability.  *Id.*  Here the ALJ found Ms. Hobbs's ability to clean her sister's house and care for a baby inconsistent with her allegation of disabling vertigo.  AR 25-26. The ALJ also found Ms. Hobbs's reports of peeling potatoes and using a computer mouse

inconsistent with wrist weakness.  AR 26.  The ALJ further noted that Ms. Hobbs reported moving

furniture while alleging total disability due to acute musculoskeletal and neurological symptoms.

AR 26.  Finally, the ALJ repeatedly noted Ms. Hobbs's ability to work despite her claimed

impairments (AR 24, 27) and her general activity level.  AR 27-28.

      Ms. Hobbs correctly asserts that a claimant alleging disability need not "vegetate in a dark

room."  Pl.'s Opening Br. 14; *Cooper v Bowen*, 815 F.2d 557, 561 (9th Cir. 1987).  However, the

ALJ presently noted specific activities performed by Ms. Hobbs that are inconsistent with Ms.

Hobbs's specific allegations of disability.  Such findings are appropriate.  *Lingenfelter*, 504 F.3d at

1040.  These findings are therefore affirmed.

### 2.    Medical Record and Symptom Exaggeration

      The ALJ may consider physician reports and observations reflected in the medical record in

conjunction with other credibility findings.  *Smolen*, 80 F.3d at 1284.  The ALJ first discussed, at

length, medical providers failure to find an explanation for Ms. Hobbs's reported paralysis episodes.

AR 25.  Here the ALJ noted that physicians found no explanation for Ms. Hobbs's reported

numbness other than meralgia parasthesias.  *Id.*  The ALJ also noted that physicians could find no

cause for Ms. Hobbs's reported knee pain (AR 25, 28), and that imaging studies of her spine and

wrist were normal.  AR 24.

      The record supports the ALJ's finding.  Ms. Hobbs reported lower extremity paralysis on two

occasions, in July 2004 and April 2005.  AR 833, 873.  Physicians could find no explanation for her

report, and noted that she ambulated normally.  *Id.*  Instead, physicians repeatedly noted that Ms.

Hobbs had meralgia parasthesias of her left thigh, and recommended that she lose weight.  AR 209,

274, 636-38, 833.  Regarding Ms. Hobbs's knee impairment, physician examinations and imaging

studies conducted between April 2000 and November 2003 showed normal physiology with occasional small swelling. AR 255-56, 258, 284-85, 294, 313, 330, 370-71, 393, 838-39. Finally, physicians noted normal spine and wrist imaging studies between April 1997 and September 2002. AR 210, 255-56, 259, 382. The ALJ's findings adequately reflect this record.

Ms. Hobbs finally asserts that the ALJ failed to properly consider a medical opinion regarding her alleged conversion disorder. Pl.'s Opening Br., 14-15. Because the record does not show that she carries a definitive conversion disorder diagnosis, discussed below, the effect of such a disorder upon her credibility will not be addressed.

In summary, the ALJ's credibility findings are supported by the record and the appropriate legal standards. These findings are affirmed.

## III.    Medical Source Statements

Ms. Hobbs asserts that the ALJ erroneously considered the opinion of treating physician Dr. Hejinian and examining psychologist Dr. Truhn.

### A.       Standards: Medical Source Statements

Generally, the ALJ must accord greater weight to the opinion of a treating physician than that of an examining physician. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If two opinions conflict, an ALJ must give "specific and legitimate reasons" for discrediting a treating physician in favor of an examining physician. *Id.* The ALJ may also reject a physician's opinion unsupported by clinical notes or findings. *Bayliss*, 427 F.3d at 1216.

### B.       Treating Physician Dr. Hejinian

On December 8, 2006, Dr. Hejinian completed a one page questionnaire regarding Ms. Hobbs's work-related limitations. AR 703. Dr. Hejinian indicated that she had treated Ms. Hobbs

since July 2006, with records from previous physicians.  AR 703.  Dr. Hejinian stated that Ms.

Hobbs would miss work two days per month due to multiple medical conditions, and that Ms.

Hobbs's condition is medically unchanged based upon Dr. Hejinian's review of previous medical

records.  *Id.*  Dr. Hejinian explained, "Ms. Hobbs has multiple medical conditions including

degenerative disc disease . . . , osteoarthritis, fibromyalgia and migraines, which produce

unpredictable and disabling symptoms including pain, fatigue, disequilibrium and vertigo." AR 703.

Dr. Hejinian stated that these symptoms would occur in a "sedentary situation."  *Id.*

     The ALJ noted this opinion (AR 28) and repeatedly discussed Dr. Hejinian's clinical opinion

and notes.  AR 25-26, 28.  The ALJ specifically cited Ms. Hobbs's reports of activity to Dr. Hejinian,

such as cleaning a house and caring for a baby.  *Id.*  The ALJ subsequently found Dr. Hejinian's

statement unsupported by her own records or the medical record as a whole.  *Id.*

     The record before this court shows that Dr. Hejinian treated Ms. Hobbs between November

28, 2006, and January 23, 2008.  AR 1055-1087.  During this time Dr. Hejinian treated Ms. Hobbs

on seven occasions.  AR 1056, 1058, 1068, 170, 1079-80.  Ms. Hobbs reported different symptoms,

and Dr. Hejinian made different diagnoses at each visit.  Dr. Hejinian respectively assessed

adjustment disorder, right arm and shoulder pain with normal examination results, diarrhea, pelvic

pain, asymptomatic fibromyalgia, asymptomatic depression, cellulitis of a toe, vaginitis, and

ecchymosis (bruising).  *Id.*

     These notes support the ALJ's finding that Dr. Hejinian's notes do not support her December

2006 limitations.  The court first notes that the record contains none of Dr. Hejinian's notes relating

to the period before the December 2006 limitations.  Dr. Hejinian's notes instead show that Ms.

Hobbs reported decreased symptoms between November 2006 and January 2008.  The ALJ's

PAGE 7 - OPINION AND ORDER

analysis reflects these notes.  The ALJ may reject unsupported physician opinions, *Bayliss*, 427 F.3d at 1216, and the ALJ's rejection of Dr. Hejinian's opinion is therefore affirmed.

### C.    Examining Psychologist Dr. Truhn

Ms. Hobbs claims that the ALJ erroneously rejected Dr. Truhn's conversion disorder diagnosis.  Pl.'s Opening Br. 16, *see* also *id.* at 14 n4.  Ms. Hobbs provides no support for her submission regarding Dr. Truhn's opinion.

Dr. Truhn evaluated Ms. Hobbs on July 28, 2005.  AR 704-13.  Dr. Truhn conducted a clinical interview, examination, and standardized personality testing.  AR 704-10.  Dr. Truhn subsequently diagnosed panic disorder without agoraphobia, post-traumatic stress disorder in partial remission, moderate major depressive disorder in remission, impulse control disorder, and histrionic personality disorder.  AR 711.  Dr. Truhn did not diagnose conversion disorder; instead he held conversion disorder as a "rule out" diagnosis.  *Id.*

This assessment does not demonstrate that Dr. Truhn conclusively made a conversion disorder diagnosis.  Therefore, Ms. Hobbs's submission that Dr. Truhn made such a diagnosis is not based upon the record.  The ALJ noted Dr. Truhn's opinion and his finding of "possible" conversion disorder.  AR 25.  This finding is based upon the record and therefore affirmed.

## IV.    Lay Witness Testimony

Ms. Hobbs claims that the ALJ did not appropriately assess testimony submitted by a lay witness, her boyfriend Gary Ledgett.  Pl.'s Opening Br. 16.

### A.    Standards: Lay Witness Testimony

The ALJ has a duty to consider lay witness testimony.   20 C.F.R. §§ 416.913(d), 416.945(a)(3); *Lewis v. Apfel*, 236 F.3d 503, 511 (9th Cir. 2001).  Friends and family members in

a position to observe the claimant's symptoms and daily activities are competent to testify regarding the claimant's condition. *Dodrill v. Shalala*, 12 F.3d 915, 918-19 (9th Cir. 1993). The ALJ may not reject such testimony without comment, and he must give reasons germane to the witness for rejecting her testimony. *Nguyen v. Chater*, 100 F.3d 1462, 1467 (9th Cir. 1996). However, inconsistency with the medical evidence may constitute a germane reason. *Lewis*, 236 F.3d at 512.

The reviewing court may affirm an ALJ's erroneous rejection of lay testimony if "the mistake was nonprejudicial to the claimant or irrelevant to the ALJ's ultimate disability conclusion." *Stout v. Comm'r*, 454 F.3d 1050, 1055 (9th Cir. 2006). Alternatively, the reviewing court may credit lay testimony if the record shows that crediting such testimony would establish workplace limitations resulting in disability. *Schneider v. Comm'r*, 223 F.3d 968, 976 (9th Cir. 2000).

### B.    Mr. Ledgett's Testimony

Mr. Ledgett submitted a third party report to the record dated June 16, 2004. AR 144-52. Mr. Ledgett stated that Ms. Hobbs spends her days on the couch, getting up only when "she needs to go somewhere or use the restroom." AR 144. Mr. Ledgett also stated that Ms. Hobbs can no longer perform household chores without frequent rest, and that he must remind her to take her medication daily. AR 145-46. Mr. Ledgett said that Ms. Hobbs makes a complete meal once every couple of weeks, and that this takes her "5 to 6" hours. AR 146. He also reported that Ms. Hobbs drives "only when she has appointments" and completes grocery shopping, which takes her "between 3-6 hours." AR 147. Mr. Ledgett said that Ms. Hobbs's hobbies include sewing, beadwork, reading, watching TV, using a computer, and gardening, but added that she can no longer garden. AR 148. Mr. Ledgett subsequently indicated that Ms. Hobbs has difficulty lifting, squatting, bending, standing, reaching, walking, sitting, kneeling, hearing, and stair climbing. AR 149. He additionally

stated that Ms. Hobbs may walk "30-40" feet, or "5-10" minutes before requiring rest.  *Id.*  Finally, Mr. Ledgett stated that Ms. Hobbs does not handle stress well, and wears glasses and a knee brace as prescribed by physicians.  AR 150.

The ALJ did not specifically discuss Mr. Ledgett's testimony, and instead offered a cursory assessment of unidentified lay testimony:

> As the claimant is shown to be able to perform light work despite her documented "severe" impairments, she is not credible regarding any allegation of disability.  On the same basis that the claimant herself is not credible, any third party or lay statements indicating disability must also be discounted.  In view of the claimant's exaggeration of symptoms, at most such statements reflect the presentation of the claimant and not her true abilities or limitations.

Tr. 29.

### C.    Analysis: Lay Witness Testimony

Ms. Hobbs claims that the ALJ failed to address limitations Mr. Ledgett identified.  Ms. Hobbs does not explain the manner in which these statements are disabling.

Defendant submits that an ALJ need not provide germane reasons to reject lay witness testimony if the record supports the ALJ's findings.  Def.'s Br. 15 (citing *Lewis v. Apfel*, 236 F.3d 503, 511-12 (9th Cir. 2001)).  This submission misconstrues the relevant legal standard.  While an ALJ may reject lay testimony that is inconsistent with the medical record, and need not provide exhaustive detail, the ALJ must still identify the lay testimony she rejects and provide an "arguably germane" reason for rejecting it.  *Lewis*, 236 F.3d at 511-12.  The *Lewis* court affirmed an ALJ's rejection of family members's testimony that was inconsistent with the medical record.  *Id.* Inconsistency with the medical record is a germane reason to reject limitations ascribed by lay testimony.  *Id.*  However, defendant presently fails to cite authority supporting the ALJ's finding that

PAGE 10 - OPINION AND ORDER

lay witness statements indicating disability (AR 29) are not credible because the claimant herself is not credible. This finding is therefore rejected.

## <u>REMAND</u>

The decision whether to remand for further proceedings or for immediate payment of benefits is within the discretion of the court. *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000.), *cert. denied*, 531 U.S. 1038 (2000). The issue turns on the utility of further proceedings.

Under the "crediting as true" doctrine, evidence should be credited and an immediate award of benefits directed where "(1) the ALJ has failed to provide legally sufficient reasons for rejecting such evidence, (2) there are no outstanding issues that must be resolved before a determination of disability can be made, and (3) it is clear from the record that the ALJ would be required to find the claimant disabled were such evidence credited." *Harman*, 211 F.3d at 1178, quoting *Smolen*, 80 F.3d at 1292.

The ALJ presently failed to provide legally sufficient reasons for rejecting Mr. Ledgett's testimony. This evidence is credited. *Hammock v. Bowen*, 879 F.2d 498, 502 (9th Cir. 1989).

In determining whether to award benefits or remand the matter for further proceedings the court must determine whether "outstanding issues remain in the record" under the second *Harman* prong. *Harman*, 211 F.3d at 1178. Neither party suggests the record warrants further development and the court finds no ambiguity in the record. However, because the vocational expert's testimony (AR 1112-15) does not address the limitations suggested by Mr. Ledgett, this court cannot determine the effect of Mr. Ledgett's testimony upon the ALJ's step five findings. Further proceedings are therefore necessary.

Upon remand, the ALJ must reassess Ms. Hobbs's RFC in light of the credited testimony.

PAGE 11 - OPINION AND ORDER

The ALJ must then correctly apply the Medical-Vocational Guidelines in light of any revised RFC findings, or consult a vocational expert.  The ALJ must subsequently make properly supported step four and five findings.

## **CONCLUSION**

The Commissioner's decision that Ms. Hobbs did not suffer from disability and is not entitled to benefits under Title XVI of the Social Security Act is not based upon correct legal standards or supported by substantial evidence.  The Commissioner's decision is REVERSED and REMANDED for further proceedings consistent with this opinion and order.

IT IS SO ORDERED.

Dated this  6th  day of June, 2009.

/s/ Michael W. Mosman
Michael W. Mosman
United States District Judge

PAGE 12 - OPINION AND ORDER